## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| RUPINDER SINGH, JEFFREY S. POPKIN, JONI WALKER and JENNY MARK, individually and on behalf of all others similarly situated, | ) ) ) ) ) | **CIVIL ACTION NO.:** |
| | ) | 2:21-cv-08458-JGK |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| DELOITTE, LLP, THE BOARD OF DIRECTORS OF DELOITTE, LLP, THE RETIREMENT COMMITTEE OF DELOITTE, LLP and JOHN DOES 1-30. | ) ) ) ) ) | |
| | ) | |
| Defendants. | | |

## PLAINTIFFS' OPPOSITION TO
## DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

## **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................ 1

II.    STANDARD OF REVIEW ................................................................................ 3

III.    STATEMENT OF FACTS ................................................................................ 5

   A.   Overview of the Plans ................................................................................ 5

   B.   The Totality of the Circumstances Demonstrates that the Plans' Fiduciaries Failed to Administer the Plans in a Prudent Manner ................................................................................ 6

      1.   Defendants Failed to Adequately Monitor the Plans' Administrative and Recordkeeping Expenses ................................................................................ 6

      2.   Many of the Plans' Funds Had Investment Management Fees In Excess of Fees for Funds in Similarly-Sized Plans ................................................................................ 7

IV.    ARGUMENT ................................................................................ 8

   A.   Plaintiffs Have Standing to Pursue Their Claims ................................................................................ 8

      1.   Plaintiffs Have Standing to Pursue Claims Regarding the Profit Sharing Plan ................. 8

      2.   Plaintiffs' Have Standing to Challenge Funds In Which They Did Not Personally Invest ................................................................................ 10

      3.   Plaintiffs Have Adequately Alleged They Were Injured By Paying Excessive Recordkeeping Fees ................................................................................ 12

   B.   The Alleged Indicia of Imprudence Considered Together Leads to an Inference that the Plan Fiduciaries Engaged In An Imprudent Process ................................................................................ 13

      1.   The Complaint Adequately Alleges Defendants Failed to Monitor the Plans' Recordkeeping Fees ................................................................................ 13

      2.   Defendants Selected and Maintained Excessively Expensive Investment Options for the Plans ................................................................................ 13

   C.   The Complaint Alleges Sufficient Facts to State A Claim for Failure to Monitor ............ 23

V.    CONCLUSION ................................................................................ 23

# TABLE OF AUTHORITIES

PAGE(S)

**Cases**

*Albert v. Oshkosh Corp.*,
2021 WL 3932029 (E.D. Wis. Sept. 2, 2021) ............................................................................ 14

*Bangalore v. Froedtert Health, Inc.*,
2022 WL 227236 (E.D. Wis. Jan. 26, 2022) ................................................................................ 2

*Barchock v. CVS Health Corp.*,
2017 WL 1382517 (D.R.I. April 18, 2017) ................................................................................ 16

*Beach v. JPMorgan Chase Bank, N.A.*,
2019 WL 2428631 (S.D.N.Y. June 11, 2019) ............................................................................ 11

*Bell v. Pension Comm. of ATH Holding Company, LLC*,
2017 WL 1091248 (S.D. Ind. March 23, 2017) .......................................................................... 15

*Braden v. Wal-mart Stores, Inc.*,
588 F.3d 585 (8th Cir. 2009) .......................................................................................... 2, 10, 13

*Brown v. Daikin v. Am., Inc.*,
2021 WL 1758898 (S.D.N.Y. May 4, 2021) .............................................................................. 16

*Caranci v. Blue Cross & Blue Shield of Rhode Island*,
194 F.R.D. 27 (D.R.I. 2000) ........................................................................................................ 8

*Cassell v. Vanderbilt Univ.*,
285 F.Supp.3d 1056 (M.D. Tenn. 2018) .................................................................................... 22

*Cryer v. Franklin Templeton Resources Inc.*,
2017 WL 818788 (N.D. Cal. Jan. 17, 2017) .............................................................................. 22

*Cunningham v. Cornell Univ.*,
2017 WL 4358769 (S.D.N.Y. Sept. 29, 2017) ....................................................................... 1, 12

ii

*Dann v. Lincoln Nat. Corp.*,
708 F.Supp.2d 481 (E.D. Pa. 2010) ............................................................ 9

*Davis v. Salesforce.com, Inc.*,
2020 WL 5893405 (N.D. Cal. Oct. 5, 2020)............................................... 22

*Davis v. Salesforce.com, Inc.*,
No. 3:20-cv-01753-MMC (ECF No 58) (9th Cir. Apr. 11, 2022) ................ 22

*Dezelan v. Voya Ret. Ins. & Annuity Co.*,
2017 WL 2909714 (D. Conn. July 6, 2017) ............................................... 21

*Divane v. Northwestern Univ.*,
953 F.3d 980 (7th Cir. 2020) ..................................................................... 19

*Falberg v. Goldman Sachs Group, Inc.*,
2020 WL 3893285 (S.D.N.Y. July 9, 2020) .................................................. 1

*Fallick v. Nationwide Mut. Ins. Co.*,
162 F.3d 410 (6th Cir. 1998) ....................................................................... 8

*Goodman v. Columbus Regional Healthcare Sys., Inc.*,
2022 WL 228764 (M.D. Ga. Jan. 25, 2022) ................................................. 1

*Hecker v. Deere & Co.*,
556 F.3d 575 (7th Cir. 2009) ..................................................................... 19

*Hughes v. Northwestern Univ.*,
142 S.Ct. 737 (2022)........................................................................ 1, 5, 19

*In re Merck & Co., Inc. Sec. Deritative & ERISA Litig.*,
2006 WL 2050577 (D.N.J. July 11, 2006)..................................................... 9

*In re Merck & Co., Inc., Sec. Derivative & ERISA Litig.*,

No. 05-CV-2369, 2006 WL 2050577 (D.N.J. July 11, 2006)....................................................... 8, 9

*Johnson et al. v. Fujitsu Tech. and Bus. of Am., Inc.*,
250 F.Supp. 3d 460 (N.D. Cal. Apr. 11, 2017) ............................................................................. 11

*Johnson et al. v. The PNC Financial Services Group, Inc. et al.*,
No. 2:20-CV-01493, slip op. (W.D. Pa. Mar. 31, 2022)................................................................. 2

*Johnson v. Providence Health & Servs.*,
2018 WL 1427421 (W.D. Wash. March 22, 2018) ....................................................................... 11

*Karpik v. Huntington Bancshares, Inc.*,
2019 WL 7482134 (S.D. Ohio Sept. 26, 2019) ............................................................................ 17

*Larson v. Allina Health Sys.*,
350 F.Supp. 3d 780 (D. Minn. 2018).......................................................................................... 10

*Leber v. Citigroup*,
No. 07-cv-9329, 2017 WL 5664850 (S.D.N.Y. Nov. 27, 2017)................................................... 11

*Loomis v. Exelon Corp.*,
658 F.3d 670 (7th Cir. 2011) ..................................................................................................... 19

*Lutz v. Kaleida Health*,
2019 WL 3556935, (W.D.N.Y. Aug. 5, 2019) ............................................................................... 1

*Meiners v. Wells Fargo & Co.*,
898 F.3d 820 (8th Cir. 2018) ..................................................................................................... 21

*Miller v. Autozone, Inc.*,
2020 WL 6479564 (W.D. Tenn. Sept. 18, 2020)..................................................................... 13, 14

*Moitoso et al. v. FMR, et al.*,
451 F.Supp.3d 189 (D.Mass. 2020) ........................................................................................... 18

*Moore et al. v. Humana, Inc. et al.*,
No. 3:21-cv-00232-RG, slip op. (W.D.Ky. Mar. 31, 2022)........................................................ 2

*Mulder v. PCS Health* Systems, Inc.,
216 F.R.D. 307 (D.N.J. 2003)................................................................................................. 9

*Patterson v. Morgan Stanley*,
2019 WL 4934834 (S.D.N.Y. Oct. 7, 2019) ......................................................................... 21

*Ramos v. Banner Health*,
2017 WL 4337598 (D. Colo. Sept. 29, 2017)........................................................................ 15

*Rohan v. Saint Luke's Health System, Inc.*,
2020 WL 8410451 (W.D. Mo. June 22, 2020) ...................................................................... 14

*Sacerdote et al. v. New York Univ.*,
9 F.4th 95 (2d Cir. 2021) ................................................................................................. 3, 14

*Shaw v. Quad/Graphics, Inc.*,
2022 WL 227502 (E.D. Wis. Jan. 26, 2022)........................................................................... 2

*Short v. Brown U.*,
320 F.Supp.3d 363 (D.R.I. July 11, 2018)............................................................................ 15

*Smith v. CommonSpirit Health*,
2021 WL 4097052 (E.D. Ky. Sept. 8, 2021) ........................................................................ 22

*Sweda v. Univ. of Pennsylvania*,
923 F.3d 320 (3d Cir. 2019)........................................................................................... 3, 13

*Thole v. U.S. Bank N.A.*,
140 S. Ct. 1615 (2020)........................................................................................... 3, 10, 11

*Tibble v. Edison Int'l*,
575 U.S. 523 (2015)............................................................................................................ 5

*Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*,
2016 WL 4507117 (C.D. Cal. Aug. 5, 2016) ............................................................................. 11

*Vellali v. Yale Univ.*,
308 F.Supp.3d 673 (D. Conn. 2018) ......................................................................................... 1

*Wehner v. Genentech, Inc.*,
2021 WL 507599 (N.D. Cal. Feb. 9, 2021) ............................................................................ 22

*White, et al. v. Chevron Corp.*,
2016 WL 4502808 (N.D. Cal. Aug. 29, 2016) ........................................................................ 23

*Young v. GM Inv. Mgmt. Grp.*,
325 F. App'x 31 (2d Cir. 2009) ............................................................................................... 17

Plaintiffs Rupinder Singh, Jeffrey S. Popkin, Joni Walker, and Jenny Mark (hereinafter, "Plaintiffs"), by and through their attorneys, respectfully submit this Opposition to Defendants'[1] Motion to Dismiss.[2]

## I.     INTRODUCTION

Plaintiffs' claims are substantially similar to those that have been upheld by the overwhelming majority of judges within the Second Circuit.[3]  And following the Supreme Court's recent *Hughes v. Northwestern Univ.*, 142 S.Ct. 737 (2022) decision, several courts have cited *Hughes* in denying motions to dismiss complaints alleging similar claims like what is alleged in the Complaint.  *See, e.g., Goodman v. Columbus Regional Healthcare Sys., Inc.*, 2022 WL 228764, at *3 (M.D. Ga. Jan. 25, 2022) (alleging that defendant's "recordkeeper received fees that were nearly double what a reasonable recordkeeping fee would have been for a similarly sized ERISA

---

[1] "Defendants" refers to Deloitte LLP ("Deloitte"), The Board of Directors of Deloitte LLP (the "Board"), The Retirement Committee of Deloitte LLP (the "Committee"), and John Does 1-30.

[2] Defendants' Memorandum of Law In Support of Defendants' Motion to Dismiss the Complaint (ECF No. 33) is referred to herein as "Defs. Mem."  All references to "¶" or "Complaint" are to the Complaint (ECF No. 1).

[3] *Falberg v. Goldman Sachs Group, Inc.*, 2020 WL 3893285, at *11 (S.D.N.Y. July 9, 2020) (upholding excessive fee claim); *Sandoval v. Exela Enterprise Solutions, Inc.*, No. 3:17cv1573, slip op. at 8 (D. Conn. Mar. 30, 2020) (same) (attached to Gyandoh Decl. as Ex. 1); *Lutz v. Kaleida Health*, 2019 WL 3556935, at * 5 (W.D.N.Y. Aug. 5, 2019) (same); *Vellali v. Yale Univ.*, 308 F.Supp.3d 673, 686 (D. Conn. 2018) (same); *In re M&T Bank Corp. ERISA Litig.*, 2018 WL 4334897, at * 7-8 (W.D.N.Y. Sept. 11, 2018) (same); *Cunningham v. Cornell Univ.*, 2017 WL 4358769, at *8 (S.D.N.Y. Sept. 29, 2017) (same); *Moreno v. Deutsche Bank Ams. Holding Corp.*, 2016 WL 5957307, at *6 (S.D.N.Y. Oct. 13, 2016) (same); *Leber v. Citigroup, Inc.*, 2010 WL 935442, at *13 (S.D.N.Y. Mar. 16, 2010) (same).

plan" and that the "recordkeeper received additional indirect compensation that was excessive and should have been more carefully scrutinized by a prudent plan fiduciary."); *Shaw v. Quad/Graphics, Inc.,* 2022 WL 227502 (E.D. Wis. Jan. 26, 2022) similarly dismissed defendants' motion to dismiss in light of the *Hughes* decision. *Shaw*, 2022 WL 227502, at *1 (denying defendants' motion to dismiss without prejudice in light of the *Hughes* decision); *see also Bangalore v. Froedtert Health, Inc.*, 2022 WL 227236, at *1 (E.D. Wis. Jan. 26, 2022) (same).

Recently, two more courts upheld similar claims to those pled in this case. *See Johnson et al. v. The PNC Financial Services Group, Inc. et al.*, No. 2:20-CV-01493, slip op. at 8 (W.D. Pa. Mar. 31, 2022) (attached as Ex. 2) (rejecting similar standing argument made by the same counsel in this case); *Moore et al. v. Humana, Inc. et al*., No. 3:21-cv-00232-RG, slip op. (W.D.Ky. Mar. 31, 2022) (attached as Ex. 3) (upholding allegations of excessive recordkeeping and administration costs where "Plaintiffs include a chart comparing similarly situated plans, including a comparison of number of participants, amount of assets, and recordkeeping fees paid.")

Given this overwhelming weight of authority, many of Defendants' arguments fall flat. First, it is black-letter law that Plaintiffs may represent another plan they did not participate in if that plan was operated by the same fiduciaries in the same imprudent manner as the Plan. Second, Defendants' arguments regarding Plaintiffs' Article III constitutional standing fail in multiple respects. Primarily, Plaintiffs have established individual standing with respect to their own investments in the Plan and it confers upon them standing to "seek relief… that sweeps beyond [their] own injury." *Braden v. Wal-mart Stores, Inc.*, 588 F.3d 585, 593 (8th Cir. 2009). Additionally, Plaintiffs have incurred injury from having to pay excessive recordkeeping and administration costs during the putative Class Period. The Supreme Court's decision in *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615 (2020) does not alter this framework.

Third, the fact Plaintiffs do not allege facts regarding the actual process employed by Defendants in monitoring the Plans'[4] fees is of no moment.  *See* Defs. Mem. at 1.  The Second Circuit recognizes, like other courts, that in cases like this one concerning breach of fiduciary duty under ERISA plaintiffs may survive motions to dismiss by alleging circumstantial evidence of a fiduciary breach.  *Sacerdote et al. v. New York Univ.*, 9 F.4th 95, 111 (2d Cir. 2021).  Indeed, prior to filing suit, Plaintiffs requested the Plan fiduciaries' meeting minutes, which by no means would be conclusive evidence of a prudent fiduciary process, but could nonetheless shed light on Defendants' fiduciary processes.[5]  Defendants denied the request. ¶ 55.

For the foregoing reasons, Defendants' motion to dismiss should be denied.

## II.    STANDARD OF REVIEW

ERISA's duty of prudence applies to both the initial selection of an investment and the

---

[4] "Plans" refers collectively to the Deloitte 401(k) Plan ("401(k) Plan") and the Deloitte Profit Sharing Plan ("PSP Plan").  All other capitalized terms will have the same meaning ascribed to them in the Complaint.

[5] For, "[w]hile the absence of a deliberative process may be enough to demonstrate imprudence, the presence of a deliberative process does not … suffice in every case to demonstrate prudence. Deliberative processes can vary in quality or can be followed in bad faith.  In assessing whether a fiduciary fulfilled her duty of prudence, we ask 'whether a fiduciary employed the *appropriate* methods to investigate and determine the merits of a particular investment,' not merely whether there were any methods whatsoever." *Sacerdote*, 9 F.4th at 111 (emphasis in original); *see also Sweda v. Univ. of Pennsylvania*, 923 F.3d 320, 332 (3d Cir. 2019) (court concluded plaintiffs may survive motions to dismiss by alleging "circumstantial" evidence of a fiduciary breach).

continuous monitoring of investments to remove imprudent ones.  *Tibble v. Edison Int'l*, 135 S. Ct. 1823, 1828-29 (2015).  When considering a motion to dismiss, "the Court must 'accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor.'" *Cotton v. Altice USA, Inc.*, 2020 WL 32422, *2 (E.D.N.Y. Jan. 2, 2020) (citing *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 472 (2d Cir. 2009)).  In ERISA actions, plaintiffs "generally lack the inside information necessary to make out their claims in detail unless and until discovery commences." *Braden*, 588 F.3d at 598.  Accordingly, plaintiffs may allege a breach of the fiduciary duty of prudence with circumstantial facts as Plaintiffs have done here.  *See PBGC*, 712 F.3d at 718.  At the motion to dismiss stage, a "complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Braden*, 588 F.3d at 594.

The Supreme Court's recent decision in *Hughes v. Northwestern Univ.*, 142 S.Ct. 737 (2022), reinforces the above pleading standard.  *Hughes* vacated a decision that was at odds with the Third and Eighth Circuit's decisions in *Sweda v. Univ. of Pennsylvania,* 923 F.3d 320 (3d Cir. 2019) and *Davis, et al. v. Washington U.*, 960 F.3d 478 (8th Cir. 2020). *See* Br. for the United States as Amicus Curiae at 17, *Hughes v. Northwestern Univ.*, No. 19-1401 (May 25, 2021)[6] ("the decision below conflicts with decisions of the Third and Eighth Circuits, both of which have held that very similar complaints—alleging that defendants offered retail-class investment shares instead of available institutional-class shares, and paid excessive recordkeeping fees in universities' Section 403(b) plans— stated claims for relief under ERISA.")

---

[6] https://www.supremecourt.gov/DocketPDF/19/19-1401/180105/20210525160954238_19-1401%20Hughes%20-%20US%20invitation%20brief%20final.pdf

*Second*, *Hughes* implores lower courts to apply the teachings of *Tibble v. Edison Int'l*, 575 U.S. 523, 529-530 (2015) where the Supreme Court "interpreted ERISA's duty of prudence in light of the common law of trusts and determined that 'a fiduciary normally has a continuing duty of some kind to monitor investments and remove imprudent ones.'" *Hughes*, 2022 WL 199351, at *3-4 (quoting *Tibble*, 575 U.S. at 530). Under trust law, cost-conscious management is of course fundamental to prudence in the investment function. Complaint, ¶¶ 4-6.

Lastly, the dicta in *Hughes* that lower courts must give consideration of "reasonable judgments a fiduciary may make" is at best an issue to be taken up at summary judgment.

## III.    STATEMENT OF FACTS

### A.  Overview of the Plans

At all times during the putative Class Period (October 13, 2015 through the date of judgment), the 401(k) Plan had at least $4.2 billion dollars in assets under management. ¶ 9. At the end of 2020 and 2019, the 401(k) Plan had over $7.3 billion dollars and $6.5 billion dollars, respectively, in assets under management that were/are entrusted to the care of the Plans' fiduciaries. *Id.* At all times during the Class Period, the PSP Plan had at least $4.8 billion dollars in assets under management. *Id.* At the end of 2020 and 2019, the PSP Plan had over $7.2 billion dollars and $6.7 billion dollars, respectively, in assets under management that were/are entrusted to the care of the Plans' fiduciaries. *Id.* During the Class Period, the combined Plans had a low of approximately 68,606 total participants in 2015 to a high of 89,027 total participants in 2019 making it eligible for some of the lowest fees on the market. ¶ 65. Both Plans are managed in an identical fashion, have identical administrators, a nearly identical menu of funds for investment, sponsors, managers and have identical Trustees. *See generally*, ¶¶ 41-53.

**B.  The Totality of the Circumstances Demonstrates that the Plans' Fiduciaries Failed to Administer the Plans in a Prudent Manner**

    **1.  Defendants Failed to Adequately Monitor the Plans' Administrative and Recordkeeping Expenses**

The term "recordkeeping" is a catchall term for the suite of administrative services typically provided to a defined contribution plan by the plan's "recordkeeper." ¶ 58.  Vanguard acted as the recordkeeper throughout the Class Period. ¶ 62.  Recordkeeping expenses can either be paid directly from plan assets, or indirectly by the plan's investments in a practice known as revenue sharing (or a combination of both or by a plan sponsor). ¶ 59.  The Plans' per participant administrative and recordkeeping fees during the Class Period were as follows:

| 401(k) Plan -- Per Participant Costs | | | | | |
|---|---|---|---|---|---|
| **Year** | **Participants** | **Direct Costs** | **Indirect Costs** | **Total** | **Per Participant** |
| **2019** | 81,639 | $5,326,534 | $54,789 | $5,381,323 | $65.92 |
| **2018** | 76739 | $5,187,016 | $208,569 | $5,395,585 | $70.31 |
| **2017** | 70264 | $3,620,793 | $602,551 | $4,223,344 | $60.11 |
| **2016** | 65814 | $4,044,412 | $562,473 | $4,606,885 | $70.00 |
| **2015** | 62114 | $2,871,393 | $829,049 | $3,700,442 | $59.58 |

| PSP Plan -- Per Participant Costs | | | | | |
|---|---|---|---|---|---|
| **Year** | **Participants** | **Direct Costs** | **Indirect Costs** | **Total** | **Per Participant** |
| **2019** | 7388 | $1,533,491 | $101,369 | $1,634,860 | $221.29 |
| **2018** | 7193 | $1,427,413 | $224,446 | $1,651,859 | $229.65 |
| **2017** | 6888 | $1,221,118 | $1,033,432 | $2,254,550 | $327.32 |
| **2016** | 6710 | $995,753 | $971,086 | $1,966,839 | $293.12 |

| PSP Plan -- Per Participant Costs | | | | | |
|---|---|---|---|---|---|
| Year | Participants | Direct Costs | Indirect Costs | Total | Per Participant |
| **2015** | 6492 | $565,456 | $1,583,481 | $2,148,937 | $331.01 |

¶ 63.  The Plans' fees were astronomical when benchmarked against similar plans.  ¶¶ 64, 66-69.

Additionally, the fact that the Plans have stayed with the same recordkeeper, namely Vanguard since at least 2004, paid an increasing amount in recordkeeping fees from 2018 to the present, and paid outrageous amounts for recordkeeping from 2015 to 2017 (nearly **3x** the amount similarly-situated plans paid), there is little to suggest that Defendants conducted a Request for Proposal ("RFP") at reasonable intervals – or certainly at any time prior to 2015 through the present - to determine whether the Plans could obtain better recordkeeping and administrative fee pricing from other service providers given that the market for recordkeeping is highly competitive, with many vendors equally capable of providing a high-level service.  ¶ 72.

### 2.  Many of the Plans' Funds Had Investment Management Fees In Excess of Fees for Funds in Similarly-Sized Plans

During the Class Period, several funds in the Plans were more expensive than comparable funds found in similarly sized plans (conservatively, plans having over 1 billion dollars in assets) is further evidence of Defendants' dereliction of duty.  ¶ 74.  In some cases, expense ratios for the Plans' funds were *420%* above the ICI Median (in the case of T.Rowe Price Spectrum Mod GR Allc Fund) and *110%* above the ICI Median (in the case of T.Rowe Price In'l Small Cap Equity Trust C) in the same category.  ¶ 84.  The high cost of the Plans' funds is also evident when comparing the Plans' funds to the average fees of funds in similarly-sized plans.  ¶ 85.  Failure to select funds that cost no more than the average expense ratios for similar funds in similarly-sized plans cost Plan participants millions of dollars in damages.  ¶ 86.

7

## IV.    ARGUMENT

### A.  Plaintiffs Have Standing to Pursue Their Claims

#### 1.   Plaintiffs Have Standing to Pursue Claims Regarding the Profit Sharing Plan

Defendants argue Plaintiffs lack standing because "they have not alleged they were injured by the purported mismanagement of the Profit Sharing Plan" because they have not alleged they participated in that Plan.  Defs. Mem. at 10.  This, however, ignores the representative nature of a suit brought under 29 U.S.C. §1132(a)(2).

As one court aptly noted in an analogous situation, it is erroneous to "suggest that a class action under ERISA could never be brought by plaintiffs representing unnamed individuals in different plans.  This is clearly not true." *Caranci v. Blue Cross & Blue Shield of Rhode Island*, 194 F.R.D. 27, 39 (D.R.I. 2000) (citations omitted).  Indeed, such a position has been rejected time and again by various courts which have found that a plaintiff has standing to sue on behalf of several plans where, such as here, each Plan is administered by the same Company or sponsor, and defendants' conduct is alleged to have affected participants in the different plans in a similar manner.  *See, e.g.*, *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 424 (6th Cir. 1998) ("[O]nce a potential ERISA class representative establishes his individual standing to sue his own ERISA-governed plan, there is no additional constitutional standing requirement related to his suitability to represent the putative class of members of other plans to which he does not belong."); *In re Merck & Co., Inc., Sec. Derivative & ERISA Litig.*, No. 05-CV-2369, 2006 WL 2050577 (D.N.J. July 11, 2006) (finding named plaintiffs can properly assert claims on behalf of another plan despite not being participants in that plan); *Mulder v. PCS Health* Systems, Inc., 216 F.R.D. 307, 317 (D.N.J. 2003) (individual in one ERISA benefit plan may represent a class of participants in numerous other plans); *Dann v. Lincoln Nat. Corp.*, 708 F.Supp.2d 481, 487 (E.D. Pa. 2010) (court

denied motion to dismiss and determined it "will defer the question of whether Dann may bring this action on behalf of the Agents' Plan and Delaware Plan until class certification").

Here, Plaintiffs alleged, (1) the Plans have identical sponsors and named fiduciaries; (2) the Plans are administered by the same Committee; (3) the Plans have the same recordkeeper; (4) the Plans are managed in an identical fashion; (5) the Plans have identical administrators; (6) the Plans have a nearly identical menu of funds for investment; (7) the Plans have identical managers;; and (8) Defendants failed to comply with their fiduciary obligations to both Plans in identical ways. ¶¶ 17-21, 23-26, 62. *See* Discussion *supra* in Section III. The court in *In re Merck* concluded that the plaintiff had standing to pursue claims on behalf of participants in other plans and remarked:

> The claims brought against the [defendants] all arise from a single issue … All four of the Plans were very similar in structure and all of them offered the [company stock] as an investment option for the participants. … [T]he responsibility for managing the investment options for all four Plans was assigned to the same entity, the MPIC, whose conduct is at issue in this Count. The MPIC Defendants owed the participants of all four Plans fiduciary duties under ERISA and their actions affected all the potential class members in a similar manner-including the participants in the Puerto Rico Plan. Accordingly, the Court finds that the Plaintiffs' can pursue the claims in Count One against the MPIC Defendants on behalf of all four Plans, including the Puerto Rico Plan.

*In re Merck & Co., Inc. Sec. Deritative & ERISA Litig.*, 2006 WL 2050577, at *8 (D.N.J. July 11, 2006).

Given the overwhelming similarities among the Plans' administration and Defendants' fiduciary failures which affected both Plans in a similar negative fashion, Plaintiffs may properly bring claims on behalf of both Plans. For the reasons set forth in the case law above, Plaintiffs have standing to pursue relief on behalf of all Plan participants injured by Defendants' conduct regardless of the precise Plan in which the participants were invested.

   **2. Plaintiffs' Have Standing to Challenge Funds In Which They Did Not Personally Invest**

Defendants' standing argument, Defs. Mem. at 12, ignores the fundamental character of ERISA breach of fiduciary duty claims; particularly, that a suit under 29 U.S.C. §1132(a)(2) is "brought in a representative capacity on behalf of the plan as a whole," and remedies under §1109 "protect the entire plan." *Braden*, 588 F.3d at 593 ("[a]lthough in certain types of matters, courts have found that a plaintiff cannot suffer an injury from an investment that he or she did not purchase, 'courts have declined to apply the above bright-line rule when addressing ERISA claims for breach of fiduciary duties.'") (citation omitted). Thus, plaintiffs in an ERISA case like this one may seek recovery on behalf of the ***entire plan***, even if they did not personally invest in every one of the funds that caused injury.[7]

The overwhelming majority of courts have rejected Defendants' standing argument.[8] *Thole v. U.S. Bank N.A.*, 140 S.Ct. 1615 (U.S. 2020) does not counsel otherwise. *Thole* involved

---

[7] *David v. Alphin*, 817 F. Supp. 2d 764 (W.D.N.C. 2011) is inapposite because neither plaintiff invested in the single challenged fund and summary judgment was granted for defendants on all other claims.

[8] *See, e.g.*, *Hay v. Gucci America, Inc.*, 2018 WL 4815558, at *4 (D.N.J. Oct. 3, 2018) ("Although in certain types of matters, courts have found that a plaintiff cannot suffer an injury from an investment that he or she did not purchase, 'courts have declined to apply the above bright-line rule when addressing ERISA claims for breach of fiduciary duties.'") (citation omitted); *Larson v. Allina Health Sys.*, 350 F.Supp.3d 780, 792 (D. Minn. 2018) (Plaintiffs' lack of investment in some investment options does not prevent them from bringing a claim on behalf of the whole plan."); *Johnson v. Providence Health & Servs.*, 2018 WL 1427421, at *4 (W.D. Wash. March 22, 2018)

a defined benefit plan, unlike the Deloitte Plan, which is a defined contribution plan. Justice Kavanaugh stated this distinction was "[o]f decisive importance to this case." *Id*. at 1618. He further observed that, among other things, "[t]he basic flaw in the plaintiffs' trust-based theory of standing is that the participants in a defined-benefit plan are not similarly situated to the beneficiaries of a private trust or to the participants in a defined-contribution plan." *Id*. at 1619. Because "in the private trust context, the value of the trust property and the ultimate amount of money received by the beneficiaries will typically depend on how well the trust is managed, so every penny of gain or loss is at the beneficiaries' risk." *Id*.

Here, Plaintiff alleges the process utilized by Defendants resulted in the selection of several imprudent funds as well as in excessive recordkeeping fees. ¶ 56. Thus, unlike in *Thole*, the ultimate recovery received by the Plans' participants here depends on "how well the trust is managed" and thus confers standing on Plaintiffs to bring suit to challenge Defendants' fiduciary

---

(same); *Johnson et al. v. Fujitsu Tech. and Bus. of Am., Inc.*, 250 F.Supp. 3d 460, 465 (N.D. Cal. Apr. 11, 2017) (same); *Beach v. JPMorgan Chase Bank, N.A.*, 2019 WL 2428631, at *4 (S.D.N.Y. June 11, 2019) ("Plaintiffs have standing to challenge Defendants' conduct with respect to all the subject funds" including those they did not invest in); *Leber v. Citigroup*, No. 07-cv-9329, 2017 WL 5664850, at *6 (S.D.N.Y. Nov. 27, 2017) (same); *Glass Dimensions, Inc. v. State Street Bank & Trust Co.*, 285 F.R.D. 169, 175 (D. Mass. 2012) (same); *Tussey v. ABB, Inc.*, No. 06-cv-4305, 2007 WL 4289694, *2 (W.D. Mo. Dec. 3, 2007) ("Defendants' argument that [plaintiff] cannot advance any claims for investment options which he never elected is not persuasive because the losses occurred to the Plan as a whole."); *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, 2016 WL 4507117, at *4-5 (C.D. Cal. Aug. 5, 2016) (same).

process. Simply put, contrary to Defendants' assertions, "Plaintiffs do not need to make a showing of investment in each fund to demonstrate standing."  *Cunningham v. Cornell Univ.*, No. 16-cv-6525 (PKC), 2019 WL 275827, at *3 (S.D.N.Y. Jan. 22, 2019) (collecting cases).

### 3.   Plaintiffs Have Adequately Alleged They Were Injured By Paying Excessive Recordkeeping Fees

Plaintiffs also suffered injuries that were caused by Defendants' fiduciary breaches including the payment of excessive investment management and recordkeeping fees.  This gives them standing to pursue the Plans' losses caused by Defendants' ***related*** conduct concerning funds in which Plaintiffs were not invested.  Defendants' challenges to Plaintiffs' standing ignores the fact that as participants in the Plans, Plaintiffs were subjected to the Plans' unreasonably excessive recordkeeping fees.  Plaintiffs allege the Plans' overall recordkeeping fees were excessive.  In particular, Plaintiffs allege "[t]he cost of recordkeeping services depends on the number of participants (or participant accounts)."  ¶ 61.

As such, Plaintiffs allege, from 2015 through 2020, the 401(k) Plan's participants paid annual per participant administrative and recordkeeping fees that ranged from $59.58 to $70.31 and $221.29 to $331.01 in the case of the PSP Plan, for a combined amount of direct and indirect compensation paid by the Plans.  ¶ 63.  Plaintiffs' evaluation of the per participant recordkeeping fee included all participants in the Plans.  *Id.*  Thus, the crux of Plaintiffs' allegations is that the Plans' participants – including the Named Plaintiffs – suffered an injury from Defendants' failure to, *inter alia*, utilize the Plans' size to negotiate a lower per participant recordkeeping and administrative fee.  Additionally, Plaintiffs allege the Plans and their participants – including Named Plaintiffs – were subjected to revenue sharing to pay for recordkeeping which "resulted in a worst-case scenario for the Plans' participants because it saddled Plans participants with above-market recordkeeping fees."  ¶ 62.  As such, Plaintiffs have more than adequately alleged they

were injured by Defendants' breach of their fiduciary duties in failing to monitor the Plans'

recordkeeping and administrative fees.

Under the *Braden* rationale (*see* discussion *supra*), once a plaintiff establishes injury for

himself, he can represent the entire plan.  Plaintiffs have done that here by alleging and establishing

injury from paying excessive recordkeeping fees.

### B.  The Alleged Indicia of Imprudence Considered Together Leads to an Inference that the Plan Fiduciaries Engaged In An Imprudent Process

#### 1.  The Complaint Adequately Alleges Defendants Failed to Monitor the Plans' Recordkeeping Fees

##### i.  Examination of Recordkeeping Fees Is Inherently Factually Intensive

Under ERISA, "[f]iduciaries must [] understand and monitor plan expenses" because

"'[e]xpenses, such as management or administrative fees, can sometimes significantly reduce the

value of an account in a defined-contribution plan,' [*Tibble*, 135 S.Ct. at 1826], by decreasing its

immediate value, and by depriving the participant of the prospective value of funds that would

have continued to grow if not taken out in fees." *Sweda*, 923 F.3d at 328.  "Many allegations

concerning fiduciary conduct, such as reasonableness of 'compensation for services' are

'inherently factual question[s]' for which neither ERISA nor the Department of Labor give specific

guidance."  *Sweda*, 923 F.3d 320, 329 (3d Cir. 2019); *see also Magna*, 2021 WL 1212579, at *11

(upholding allegations plan fiduciaries overpaid for recordkeeping); *McCool*, 2021 WL 826756,

at *5 (same); *Parmer,* 2021 WL 464382, at *9 (same); *Miller v. Autozone, Inc.*, 2020 WL 6479564,

at * 10 (W.D. Tenn. Sept. 18, 2020) ("the Court recognizes the need to conduct discovery on this

[recordkeeping] issue…"); *McNeilly*, No. 1:20-cv-00870-PLM-PJG, at *15 (same).   When

considering Plaintiffs' allegations of excessive recordkeeping fees, the Court should apply "a fair

reading of the entire Complaint."  *Rohan v. Saint Luke's Health System, Inc.*, 2020 WL 8410451,

13

at *6 (W.D. Mo. June 22, 2020).  Thus, whether the Plans' recordkeeping fees ranging from $59.58 to $70.31 (in the case of the 401(k) Plan) and $221.29 to $331.01 (in the case of the PSP Plan) per participant during the Class Period were reasonable demonstrates the need for further discovery. *See Miller*, 2020 WL 6479564, at * 10 ("the Court recognizes the need to conduct discovery on this issue….").  [9]

### ii.   Defendants Failed to Adequately Stay Informed About Overall Trends in the Market Place Regarding Recordkeeping Fees

Defendants do not dispute Plaintiffs' allegations that Defendants did not undertake a RFP process during the Class Period.  The Second Circuit's recent decision reversing the trial court's ruling speaks to this point.   Importantly, "[w]hile the absence of a deliberative process may be enough to demonstrate imprudence, the presence of a deliberative process does not, contrary to the dissent's suggestion, suffice in every case to demonstrate prudence."  *Sacerdote et al. v. NYU*, 9 F.4th 95, 2021 WL 3610355 at *9.   In *Sacerdote*, "[t]he fact that one document purport[ed] to memorialize a discussion about whether or not to offer retail shares [did] not establish the prudence of that discussion or its results as a matter of law."  *Id.* at *8.  Although the Second Circuit was referring to plan investment fees, its analysis is a recognition of the importance of "testimony" among other things that should accompany documents.  *Id.*

---

[9] *Albert v. Oshkosh Corp.*, which relied on the now reversed *Divane v. Northwestern Univ.* decision in dismissing the plaintiffs' claims, is presently on appeal before the Seventh Circuit.  *Albert v. Oshkosh Corp.*, 2021 WL 3932029, at * 5 (E.D. Wis. Sept. 2, 2021), *appeal filed* (7th Cir. Oct. 1, 2021).

This recognition is particularly important in this case where the objective evidence points to a deficient process that failed to obtain results that were obtainable during the Class Period. First, Plaintiffs allege an RFP should happen frequently if fee benchmarking reveals the recordkeeper's compensation to exceed levels found in other, similar plans.  ¶ 71.  As alleged in the Complaint, the recordkeeper's compensation *did* exceed levels found in comparable or even smaller plans, ¶¶ 63-69, so plausibly, it is the case that Defendants should have conducted RFPs during the Class Period.

It was critically important for the Plans' fiduciaries to both conduct RFPs in this case and leverage the Plans' asset size and total number of participants to bargain for reasonable per participant recordkeeping and administrative costs beginning at the start of the Class Period. ¶ 72. Specifically, this would have allowed the Plans' participants to determine whether they were obtaining the best rates from Vanguard.  *Bell v. Pension Comm. of ATH Holding Company, LLC*, 2017 WL 1091248 at * 5 (S.D. Ind. March 23, 2017) (finding "that Plaintiffs were not required to allege that the recordkeeping fees were the result of any type of self-dealing, but were required to assert only that Defendants failed to act with prudence under § 1104 when failing to solicit bids and to monitor and control recordkeeping fees."); *Short v. Brown U.*, 320 F.Supp.3d 363, 370 (D.R.I. July 11, 2018) ("Plaintiffs' claim that a prudent fiduciary in like circumstances would have solicited competitive bids plausibly alleges a breach of the duty of prudence."); *Ramos v. Banner Health*, 2017 WL 4337598, at * 3 (D. Colo. Sept. 29, 2017) (upholding claims defendant "failed to engage in a competitive bidding process in retaining Fidelity as the Plan's recordkeeper.").

### iii.   The Plans' Recordkeeping Fees Were Excessive Based on Market Comparisons for Plans of Similar Sizes

Defendants argue Plaintiffs' excessive recordkeeping fee allegations "fixate only on the purposed fees, without offering any allegations about the scope or caliber of the services being

provided in exchange for those fees." Defs. Mem. at 16 (emphasis omitted).[10]  Defendants'
argument is a red herring because Plaintiffs have alleged that nearly all recordkeepers offer the
same range of services.  ¶ 58; *see also Kendall*, 2021 WL 1231415, at *11 (assuming plaintiffs
must allege fees were excessive related to the services rendered, "Plaintiffs also allege that all
recordkeepers provide the same core group of services" to satisfy this requirement).  Regardless,
this argument has been consistently rejected by other courts considering similar motions to
dismiss because of the factually intensive nature of the scope of services.  *See, e.g. Magna*, 2021
WL 1212579, at * 10 ("With respect to Defendants' second argument, at this stage Plaintiffs need
not allege why the fees were not justified by the services provided when considering the plan as
a whole."); *Allison v. L Brands, Inc.*, 2021 WL 4224729, at *8 (S.D. Ohio Sept. 16, 2021) ("while

---

[10] In *Barchock v. CVS Health Corp.,* 2017 WL 1382517, at * 5 (D.R.I. April 18, 2017), the court
reasoned "the newly asserted facts in the Complaint focus primarily on the extent and duration of
the Fund's investment in cash or cash-equivalent assets."  *Id.*  These facts are inapposite to the
facts in this case where Plaintiffs are alleging they were saddled with unreasonable fees.  In *Brown
v. Daikin v. Am., Inc.*, responding to the plaintiffs' allegations that the plan's recordkeeper received
excess funds from a number of sources, the court concluded "it would only make sense that the
fees [John Hancock] charged . . . would exceed those charged by a simple administrative services
provider . . . because as it pertained to the Plan, John Hancock was not only an administrative
services provider, but also an investment manager for several of the Plan's investment funds."
*Brown v. Daikin v. Am., Inc.*, 2021 WL 1758898, at *8 (S.D.N.Y. May 4, 2021).  Here, Plaintiffs'
allegations Defendants caused the Plan to pay excessive recordkeeping fees are not offset by costs
attributable to other services.  *See* ¶¶ 58-73.

this Court agrees with the Defendants that the reasonableness of the cost of the services provided is based on more than the bottom-line cost, Plaintiff does not rely merely on the bottom-line cost"); *Stark v. Keycorp*, 2021 WL 1758269, at *7 (N.D. Ohio May 4, 2021) (citing *Braden*, 588 F.3d at 596) (court rejected defendants' argument that "[p]laintiffs have failed to specifically identify the bundle of administrative services provided by Alight that might justify the higher costs" finding "plaintiffs are not required to rebut "all possible lawful explanations for a defendant's conduct."); *Kruger v. Novant Health, Inc.*, 131 F.Supp.3d 470, 479 (M.D.N.C. 2015) ("While Defendants claim that Plaintiffs have not alleged facts regarding … the services provided, or how the fees charged to the Plan were excessive in light of those services, this court finds that those are the types of facts warranting discovery, and, therefore, dismissal at this stage is not appropriate"); *Krueger v. Ameriprise Financial, Inc.*, 2012 WL 5873825, at *20 (D. Minn. Nov. 20, 2012) (same); *Karpik v. Huntington Bancshares, Inc.*, 2019 WL 7482134, at *7-8 (S.D. Ohio Sept. 26, 2019) (same).

Moreover, it strains credulity to assume that Defendants obtained recordkeeping and administrative services for the Plans that were so far and above what its peers obtained that its off-the charts recordkeeping and administrative fees were justified.[11]   This is yet another reason why discovery on these issues is needed instead of crediting Defendants' bald statements.

---

[11] *Young v. GM Inv. Mgmt. Grp*., 325 F. App'x 31, 33 (2d Cir. 2009) does not counsel otherwise. The court noted plaintiffs did not allege "specific services," but unlike here, plaintiffs in that action alleged "no facts concerning other factors relevant to determining whether a fee is excessive under the circumstances."

Plaintiff pled numerous examples of market comparisons and reasonable fee benchmarks to support the claims the Plans' recordkeeping fees were excessive. ¶¶ 66-69.  Notably, Plaintiffs cite to two similarly sized plans that paid Vanguard – the same recordkeeper for the present Plans – fees ranging from $27 to $33 dollars per participant, which is far less than the participants paid to Vanguard in this Plan.  These allegations add up to a plausible claim for fiduciary failures.  *See, e.g., PNC,* No. 2:20-CV-01493, at *11 (upholding recordkeeping fee claims when "Plaintiffs allege that the Plan's average per participant, per year recordkeeping fee of $52.58 is "unreasonable and excessive relative to the services received[,]" especially when compared to the four other 401(k) plans noted within the Plaintiffs' benchmark table."); *VCA,* No. 21-9140-GW-AGRx, at *6 (denying motion to dismiss recordkeeping fee claim when, "In defense of their position that such a fee is unreasonable, Plaintiffs provide a table of 'per participant retirement plan service fees' for other comparable plans with similar numbers of participants. *Id.* ¶ 129. The table at Plaintiffs' Complaint ¶ 129 indicates that Plaintiffs' alleged comparable plans have recordkeeping services fees between $28 to $49."); *Moitoso et al. v. FMR, et al.*, 451 F.Supp.3d 189, 214 (D.Mass. 2020) ("parties [] stipulated that if Fidelity were a third party negotiating this fee structure at arms-length, the value of services would range from $14-$21 per person per year over the class period, and that the recordkeeping services provided by Fidelity to this Plan are not more valuable than those received by other plans of over $1,000,000,000 in assets where Fidelity is the recordkeeper.").

Lastly, Defendants' argument that Plaintiffs only compare one year of the Plans' recordkeeping fees to comparator plans is belied by the citation to other market benchmarks that span a period of several years and confirm the plausibility of the Plans' excessive fees when looking at a one year window as an exemplar.

18

2.  **Defendants Selected and Maintained Excessively Expensive Investment Options for the Plans**

i.      **The ICI Chart is a Useful Measurement**

Defendants attempt to oversimply Plaintiffs' claims related to the Plans' funds excessive investment management fees.  Defs. Mem. at 19-22.[12]  This wholly misunderstands the gravamen of Plaintiffs' allegations.   Plaintiffs allege that "Plaintiffs have drawn reasonable inferences regarding Defendants' decision-making processes based upon the numerous factors," one of which being that the Plans' investment management fees far exceeded that of "comparable funds found in similarly sized plans."  ¶¶ 56, 74.  When considering Plaintiffs' Complaint as a whole, Plaintiffs' allegations regarding the Plans' funds' excessive fees is one factor that demonstrates Defendants' imprudent process.  At the motion to dismiss stage, a "complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible."  *Braden*, 588 F.3d at 594; *see also Sweda,* 923 F.3d at 331.

Defendants question the usefulness of the Complaint's utilization of median and average fee comparisons, but this misunderstands the purpose of Plaintiff's comparisons.  Defs. Mem. at

---

[12] Defendants' rely on pre-*Hughes* Seventh Circuit authority, such as *Hecker v. Deere & Co.,* 556 F.3d 575 (7th Cir. 2009) and *Loomis v. Exelon Corp*., 658 F.3d 670 (7th Cir. 2011).  Both of those cases were decided long before the Supreme Court considered the Seventh Circuit's erroneous ruling in *Divane v. Northwestern Univ.*, 953 F.3d 980 (7th Cir. 2020).  *See, e.g., Hughes v. Northwestern Univ.*, 142 S.Ct. 737 (2022) more fully addressed *supra* Section II.  The *Hughes* decision is in line with the Second, Third, and Eighth Circuits regarding allegations a plaintiff needs to plead in order to survive a motion to dismiss claims of excessive fees.

20-22.  Defendants' arguments are seemingly directed to what they wish Plaintiffs pled versus what Plaintiffs actually pled.  Plaintiffs show a *stark* difference between what the Plans' funds charged for expense ratios and what the universe of other Plans' funds charged for expense ratios.  Some of the Plans' funds had expense ratios that exceeded comparable funds by as much as 420% in some instances.  *See* ¶ 84.  These allegations plausibly demonstrate a concrete injury given the magnitude of the discrepancy.  Plaintiffs are masters of their own complaint and can express their grievances in the manner they choose.  The fact that some other funds may have performed better than the Plans' funds net of fees is not before the Court and is a factual issue incapable of resolution at the motion to dismiss stage.

Importantly, the median and average cost comparisons charts in the Complaint highlight a glaring failure in the Plans' fiduciaries' investment selection and monitoring process.  Using the ICI chart is appropriate because it uses an objective benchmark for measuring fee expenses: plan size.  This chart lends support to Plaintiffs' allegations that the Plans' fiduciaries caused the Plans and their participants to overpay for Plans' funds.  Had the Plans' fiduciaries faithfully executed their fiduciary duties, the expectation would be the expense ratios for the majority of the Plans' funds would be at or below the median and average prices similarly situated plans paid.  Instead, the opposite was true.

Notwithstanding Defendants' criticism of the use of the ICI median and averages charts, several courts have upheld claims based in part on the chart.  *See Silva,* 2020 U.S. Dist. LEXIS 250206, at *13 ("Plaintiffs allege that most of the investment options in the Plan charged higher-than-average fees, with reference to median fees published by the Investment Company Institute and the fees of alleged comparators."); *Pinnell*, 2020 WL 1531870 at * 5 ("[Plaintiffs] included three tables comparing investment options offered by the Plan to similar or identical lower-fee

alternatives and comparing expense ratios to median fees in the same category); *see generally McCool*, 2021 WL 826756 (upholding allegations based on ICI median charts); *Magna*, 2021 WL 1212579, at *7 (court rejected defendants challenges of the ICI study finding "[t]o the extent that Defendants argue the merits of Plaintiffs' comparisons, such arguments are premature in a motion to dismiss").[13]

> ### ii.   Whether Plaintiff's Alleged Comparators are Meaningful Comparators for the Challenged Plan Funds is Not Suitable for Resolution at the Motion to Dismiss Stage

Defendants ultimately take issue with Plaintiffs' choice of comparators, but the argument raises issues of fact that require assessment on a more developed record.[14]  *See Silva,* 2020 U.S.

---

[13] Defendants suggest "'median' or 'average' fees are not meaningful benchmarks, as numerous courts have held," Defs. Mem. at 20 (citing several cases), but that is simply untrue.  As addressed *supra*, numerous federal courts across the country have in fact denied analogous motions to dismiss when the complaints at issue similarly relied on the ICI Chart.

[14] Unsurprisingly, Plaintiff's allegations are easily distinguishable from those in Defendants' authorities.  Plaintiff does not fault Defendants for failing to "pick the best performing fund," as in *Meiners*.  *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 823 (8th Cir. 2018).  Instead, Plaintiffs are challenging the *process* utilized by defendants that resulted in selection of several imprudent funds rather than attacking the specific funds.  *See Patterson v. Morgan Stanley*, 2019 WL 4934834, at *2 (S.D.N.Y. Oct. 7, 2019) ("Plaintiffs focus on thirteen investment options.");  *Dezelan v. Voya Ret. Ins. & Annuity Co.*, 2017 WL 2909714, at * 1 (D. Conn. July 6, 2017) (challenging one product; Voya's stable value funds).  *Smith v. CommonSpirit Health* and *Forman v. TriHealth, Inc.* are both presently pending appeal before the Sixth Circuit.  *See Smith v.*

Dist. LEXIS 250206, at *13 (quoting *Nicolas v. Trustees of Princeton Univ.*, No. 17- 3695, 2017 WL 4455897, at *5 (D.N.J. Sept. 25, 2017)) (an inquiry into 'whether the alternative funds Plaintiff[s] suggest[ ] are apt comparisons' is a question of fact unsuitable for resolution on a motion to dismiss.); *McCool*, 2021WL 826756, at *5 ("the appropriate inquiry on these claims involves issues of fact, which cannot be determined on a motion to dismiss"); *Cassell v. Vanderbilt Univ.*, 285 F.Supp.3d 1056, 1067 (M.D. Tenn. 2018) (same); *Cryer v. Franklin Templeton Resources Inc.*, 2017 WL 818788, at *4 (N.D. Cal. Jan. 17, 2017) (same). [15]

---

*CommonSpirit Health*, 2021 WL 4097052 (E.D. Ky. Sept. 8, 2021), *appeal filed*, No. 21-5964 (6th Cir.) and *Forman v. TriHealth, Inc*., 2021 WL 4346764, at *7 (S.D. Ohio Sept. 24, 2021) (similar), *appeal filed*, No. 21-3977 (6th Cir.).

[15] Defendants rely on *Davis v. Salesforce.com, Inc.*, 2020 WL 5893405 (N.D. Cal. Oct. 5, 2020). to attack Plaintiffs' benchmarks.  *See* Defs. Mem. at 21-22.  On April 11, 2022, the Ninth Circuit reversed and remanded *Davis v. Salesforce.com, Inc.*, No. 3:20-cv-01753-MMC (ECF No 58) (9th Cir. Apr. 11, 2022).   *Kong v. Trader Joe's Co.,* 2020 WL 7062395, at *4 (C.D. Cal. Nov. 30, 2020) was similarly reversed and remanded.  *See Kong v. Trader Joe's Co.*, No. 2:20-vb-05790-PA-JEM (9th Cir. Apr. 15, 2022).   Relying on precedent set forth by district courts across California, the court in *Wehner v. Genentech, Inc.*, rejected the plaintiffs' comparisons of actively and passively managed funds.  *Wehner v. Genentech, Inc.*, 2021 WL 507599, at *10 (N.D. Cal. Feb. 9, 2021).   As addressed *supra*, most courts have held that the adequacy of plaintiffs' benchmarks raises issues of facts not suitable for resolution at the motion to dismiss.  *White, et al. v. Chevron Corp*., 2016 WL 4502808 (N.D. Cal. Aug. 29, 2016), which Defendants also rely, is an outlier that similarly relied on precedent outside the Second Circuit.

**C.  The Complaint Alleges Sufficient Facts to State A Claim for Failure to Monitor**

Defendants challenge Plaintiffs' fiduciary breach claims and argue "because Count I of the Complaint fails as deficient and implausible, so, too, does Count II."  Dems. Mem. at 22.  Because Plaintiffs have adequately alleged Defendants breached their fiduciary duties under ERISA, Plaintiffs need not allege any further facts for Defendants to be liable for co-fiduciary breaches under 29 U.S.C. § 1105(a).

**V.      CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' motion to dismiss in its entirety and seek leave to amend the Complaint should the Court grant Defendants' motion.

Dated: April 29, 2022                              Respectfully submitted,

**CAPOZZI ADLER, P.C.**

*/s/ Mark K. Gyandoh*
Mark K. Gyandoh, Esquire
PA Attorney ID # 88587
Gabrielle Kelerchian, Esquire
PA Attorney ID # 324248
**CAPOZZI ADLER, P.C.**
312 Old Lancaster Road
Merion Station, PA 19066
markg@capozziadler.com
gabriellek@capozziadler.com
(610) 890-0200
Fax (717) 233-4103

Donald R. Reavey, Esquire
PA Attorney ID #82498
2933 North Front Street
Harrisburg, PA 17110
donr@capozziadler.com
(717) 233-4101
Fax (717) 233-4103

Counsel for Plaintiffs and the Putative Class

## CERTIFICATE OF COMPLIANCE

I, Mark K. Gyandoh, an attorney, hereby certify that the Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Complaint complies with the type-volume limitation pursuant to § II.D. of the Individual Practices of Judge John G. Koeltl.  The brief contains 6,876 words of Times New Roman 12-point proportional type.


*/s/ Mark K. Gyandoh*_____
Mark K. Gyandoh

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 29, 2022, a true and correct copy of the foregoing document was filed with the Court utilizing its ECF system, which will send notice of such filing to all counsel of record.

By:   <u>/s/ *Mark K. Gyandoh*</u>
           Mark K. Gyandoh, Esq