UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RUPINDER SINGH, JEFFREY S. POPKIN, JONI WALKER, and JENNY MARK, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DELOITTE LLP, THE BOARD OF DIRECTORS OF DELOITTE LLP, THE RETIREMENT COMMITTEE OF DELOITTE LLP and JOHN DOES 1-30,<br><br>Defendants | Case No. 2:21-cv-08458-JGK |

**REPLY MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................................. 1

II. ARGUMENT ......................................................................................................................... 2

    A. The Opposition's Reliance on *Hughes v. Northwestern* Is Misplaced ................... 2

    B. Plaintiffs Lack Standing to Pursue Most of Their Claims ...................................... 4

        1. Plaintiffs Lack Standing to Pursue Claims Regarding the Profit Sharing Plan ................................................................................................ 4

        2. Plaintiffs Lack Standing to Pursue Claims Regarding Four of the Six Challenged Funds ........................................................................... 5

    C. Plaintiffs Have Not Stated a Plausible Claim for Excessive Recordkeeping Fees ......................................................................................................................... 6

    D. Plaintiffs Have Not Stated a Plausible Claim for Imprudent Investments ............. 8

    E. Plaintiffs Have Not Stated a Claim for Breach of Duty to Monitor ....................... 9

III. CONCLUSION ...................................................................................................................... 9

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Brown v. Daikin Am., Inc.*,
  2021 WL 1758898 (S.D.N.Y. May 4, 2021) .................................................................................7

*In re Citigroup Erisa Litig.*,
  104 F. Supp. 3d 599 (S.D.N.Y. 2015) .........................................................................................5

*Cole v. Blackwell Fuller Music Publ'g, LLC*,
  2018 WL 4680989 (S.D.N.Y. Sept. 28, 2018) .............................................................................7

*In re Commodity Exch., Inc.*,
  213 F. Supp. 3d 631 (S.D.N.Y. 2016) .........................................................................................4

*Cunningham v. USCI Ins. Servs. LLC*,
  2022 WL 889164 (S.D.N.Y. Mar. 25, 2022) ........................................................................4, 7, 8

*DaimlerChysler Corp. v. Cuno*,
  547 U.S. 332 (2006) .....................................................................................................................6

*Dezelan v. Voya Ret. Ins. & Annuity Co.*,
  2017 WL 2909714 (D. Conn. July 6, 2017) ................................................................................5

*Divane v. Northwestern University*,
  953 F.3d 980 (7th Cir. 2020) .......................................................................................................2

*Fallick v. Nationwide Mut. Ins. Co.*,
  162 F.3d 410 (6th Cir. 1998) .......................................................................................................4

*Ferguson v. Ruane Cunniff & Goldfarb Inc.*,
  2019 WL 4466714 (S.D.N.Y. Sept. 18, 2019) .............................................................................8

*Gates v. United Health Grp. Inc.*,
  2012 WL 2953050 (S.D.N.Y. July 16, 2012) ..............................................................................5

*Goodman v. Columbus Regional Healthcare Systems, Inc.*,
  2022 WL 228764 (M.D. Ga. Jan. 25, 2022) ................................................................................3

*Hughes v. Northwestern University*,
  142 S. Ct. 737 (2022) ............................................................................................................. 2, 3

*Johnson v. The PNC Financial Services Group, Inc.*,
  No. 2:20-CV-01493 (W.D. Pa. Mar. 31, 2022) ...........................................................................3

*LaRue v. DeWolff, Boberg & Assocs.*,
    552 U.S. 248 (2008) ...........................................................................................................6

*Lewis v. Casey*,
    518 U.S. 343 (1996) ...........................................................................................................6

*Mahon v. Ticor Title Ins. Co.*,
    683 F.3d 59 (2d Cir. 2012) .................................................................................................4

*Mator v. WESCO Distrib. ("Mator II")*,
    2022 WL 1046439 (W.D. Pa. Apr. 7, 2022) ......................................................................4

*Meiners v. Wells Fargo & Co.*,
    898 F.3d 820 (8th Cir. 2018) .............................................................................................8

*Perkins v. United Surgical Partners Int'l, Inc.*,
    2022 WL 824839 (N.D. Tex. March 18, 2022) .................................................................4

*Seidner v. Kimberly-Clark Corp.*,
    2022 WL 865890 (N.D. Tex. Mar. 23, 2022) ....................................................................9

*In re SLM Corp. ERISA Litig.*,
    2010 WL 3910566 (S.D.N.Y. Sept. 24, 2010) ...............................................................4, 5

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ...........................................................................................................5

*Pension Ben. Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v.
    Morgan Stanley Inv. Mgmt. Inc.*,
    712 F.3d 705 (2d Cir. 2013) ...............................................................................................8

*Thole v. U.S. Bank, N.A.*,
    140 S. Ct. 1615 (2020) .......................................................................................................5

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021) .......................................................................................................6

*Young v. GM Inv. Mgmt. Grp.*,
    325 F. App'x 31 (2d Cir. 2009) ..........................................................................................8

**Rules**

Fed. R. Civ. P. 12(b)(6) ................................................................................................................2

I. **INTRODUCTION**

In its opening Memorandum (Dkt. 33 ("Mem.")), Deloitte demonstrated that Plaintiffs' Complaint is subject to dismissal. Nothing in Plaintiffs' Opposition (Dkt. 44 ("Opp.")) shows otherwise.

To start, Plaintiffs concede they have never participated in the Profit Sharing Plan. This means Plaintiffs lack Article III standing to pursue their ERISA claims on behalf of that plan. In response, Plaintiffs argue only that they have "class standing" to represent participants in the Profit Sharing Plan. Opp. at 8. But the Second Circuit has rejected this very argument, and Plaintiffs effectively concede this point by failing to address binding Circuit authority.

Plaintiffs also concede they never invested any of their personal retirement assets in four of the six funds they challenge as imprudent. Accordingly, Plaintiffs lack Article III standing to pursue their claim regarding those four funds. First, Plaintiffs argue they have standing simply because they are suing "on behalf" of the Plans, but the Supreme Court has rejected that precise argument. Second, Plaintiffs argue that because they have standing to pursue their claim challenging the 401(k) Plan's recordkeeping fees, they can also assert claims related to plan funds—but Article III standing is not "dispensed in gross," and Plaintiffs cannot manufacture standing on one claim by bootstrapping it to a distinct injury allegedly associated with another claim.

The Opposition also fails to save Plaintiffs' claims on the merits. As to the recordkeeping fee claim, Plaintiffs' Opposition ignores most of Deloitte's arguments for dismissal altogether, insisting that the Court should brush them aside as "factual question[s]" that cannot be addressed on a motion to dismiss. This is wrong. Plaintiffs' theory is that the Plans' fees were excessive *when compared to "similar" plans* that they say paid less, and given Plaintiffs' attempt to plead their claims in this way, the Court is duty-bound to scrutinize the factual allegations underpinning

1

Plaintiffs' comparisons. Even the most minimal scrutiny warrants dismissal.

As to the imprudent investment claim, Plaintiffs double down on their contention that the median and average expense ratios from a single ICI Study are sufficient to state a claim that the challenged funds were too expensive, without addressing the fact that the ICI Study is not a meaningful benchmark as a matter of law. Case after case have dismissed prudence claims invoking the same flawed ICI Study. This case is no different.

## II.   ARGUMENT

### A.   The Opposition's Reliance on *Hughes v. Northwestern* Is Misplaced

As an initial matter, Plaintiffs argue in the Opposition that the Supreme Court's recent decision in *Hughes v. Northwestern University*, 142 S. Ct. 737 (2022), confirms their claims are adequately pled and compels denial of Deloitte's Motion to Dismiss. Opp. at 8-12. Plaintiffs are wrong.

*Hughes* reviewed the Seventh Circuit's decision in *Divane v. Northwestern University*, 953 F.3d 980 (7th Cir. 2020), affirming the Rule 12(b)(6) dismissal of claims that retirement plan fiduciaries had breached their fiduciary duties under ERISA by, among other things, "offering needlessly expensive investment options and paying excessive recordkeeping fees." *Hughes*, 142 S. Ct. at 739-40. The Supreme Court disagreed with the Seventh Circuit's use of a "categorical rule" that the availability of certain lower-cost investment options within a retirement plan could insulate fiduciaries from other alleged breaches, and remanded the case to the Seventh Circuit for reconsideration without application of that "categorical rule." *Id*. at 740-422. Beyond that, however, *Hughes* did not decide that the claims under review were plausibly alleged. Deloitte did not argue that Plaintiffs' challenges to certain investments in the Plans failed because other investment options were prudently managed. Accordingly, Plaintiffs' reliance on *Hughes* is misplaced.

Separately, Plaintiffs point to several out-of-circuit decisions they say denied motions to dismiss ERISA fiduciary-breach cases based on *Hughes*, urging this Court to do the same. Opp. at 1-2. Those cases are all legally inapposite, factually distinguishable, or both. Two of the cited cases did not even reach a decision on the merits. In *Bangalore v. Froedert Health* and *Shaw v. Quad/Graphics, Inc.*, the courts merely denied motions to dismiss without prejudice after the *Hughes* decision issued because the parties had devoted much of their briefing to the Seventh Circuit's underlying decision that was vacated by *Hughes*. In both matters, the courts allowed the defendants to refile motions to dismiss, and thus have not yet construed or applied *Hughes* at all.

Likewise, Plaintiffs are wrong in stating that *Goodman v. Columbus Regional Healthcare Systems, Inc.*, 2022 WL 228764 (M.D. Ga. Jan. 25, 2022), denied dismissal of "similar" claims following *Hughes*. Opp. at 1. That court relied on *Hughes* to conclude only that the plaintiffs stated plausible claims by alleging "the plan fiduciary offered higher priced retail-class mutual funds instead of available *identical* lower priced institutional-class funds." *Id.* Plaintiffs do not make that claim here.

Finally, the plaintiffs' recordkeeping-fee allegations in *Johnson v. The PNC Financial Services Group, Inc.*, No. 2:20-CV-01493, slip op. (W.D. Pa. Mar. 31, 2022), are distinguishable because the *PNC* plaintiffs alleged the PNC plan's *total* recordkeeping fees (*i.e.*, direct and indirect fees) were higher than the *total* direct and indirect fees paid by several "comparable" plans (*see* Dkt. 42, Am. Compl. ¶ 46), whereas the Complaint here improperly compares the Deloitte Plans' alleged *total* recordkeeping fees to *only the direct fees* of the so-called comparable plans, and does not even *allege* that Plaintiffs paid any indirect fees at all.

In sum, *Hughes* does not greenlight the sorts of allegations Plaintiffs make here; if anything, *Hughes*' reaffirmation of several core pleading principles in ERISA cases supports

3

dismissal of the Complaint.[1]

## B. Plaintiffs Lack Standing to Pursue Most of Their Claims

### 1. Plaintiffs Lack Standing to Pursue Claims Regarding the Profit Sharing Plan

As Deloitte explained (Mem. at 9-11), Plaintiffs lack standing to bring their claims regarding the Profit Sharing Plan because they were never participants in that plan. The Opposition does not dispute that fact, nor does it attempt to address the Second Circuit caselaw upholding dismissal of other plaintiffs' ERISA claims on behalf of plans they did not participate in. *See, e.g., In re SLM Corp. ERISA Litig.*, 2010 WL 3910566, at *12 (S.D.N.Y. Sept. 24, 2010), *aff'd sub nom. Slaymon v. SLM Corp.*, 506 F. App'x 61 (2d Cir. 2012). Instead, Plaintiffs rely on a handful of out-of-circuit decisions, namely *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410 (6th Cir. 1998), for the proposition that "once a potential ERISA class representative establishes his individual standing to sue his own ERISA-governed plan, there is no additional constitutional standing requirement related to his suitability to represent the putative class of members of other plans to which he does not belong." *Id.* at 424.

But "the Second Circuit rejected this doctrine, stating that 'a plaintiff must demonstrate standing for each claim he seeks to press.'" *In re Commodity Exch., Inc.*, 213 F. Supp. 3d 631, 677 (S.D.N.Y. 2016) (quoting *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 64 (2d Cir. 2012)). Accordingly, courts in this Circuit uniformly find that "[i]f an ERISA plaintiff brings claims concerning plans in which she did not participate she lacks the requisite redressability or injury-

---

[1] *See, e.g., Mator v. WESCO Distrib. ("Mator II")*, 2022 WL 1046439, at *3 (W.D. Pa. Apr. 7, 2022); *Cunningham v. USCI Ins. Servs. LLC*, 2022 WL 889164 (S.D.N.Y. Mar. 25, 2022); *Perkins v. United Surgical Partners Int'l, Inc.*, 2022 WL 824839 (N.D. Tex. March 18, 2022).

4

in-fact to give her standing to sue." *Dezelan v. Voya Ret. Ins. & Annuity Co.*, 2017 WL 2909714, at *6 (D. Conn. July 6, 2017).[2] Under binding Second Circuit precedent, because "Plaintiffs do not claim to be participants, beneficiaries, or fiduciaries" of the Profit Sharing Plan, they cannot bring claims on behalf of that plan, and those claims must be dismissed. *In re SLM Corp. ERISA Litig.*, 2010 WL 3910566, at *12. Nothing could be simpler.

### 2. Plaintiffs Lack Standing to Pursue Claims Regarding Four of the Six Challenged Funds

Plaintiffs also do not dispute that they never invested any of their personal 401(k) Plan assets in four of the six allegedly imprudent funds, but still insist they have standing to pursue their imprudent-investment claim related to those funds for two reasons. Plaintiffs are wrong on both fronts.

First, Plaintiffs argue "plaintiffs in an ERISA case like this one may seek recovery on behalf of the *entire plan*, even if they did not personally invest in every one of the funds that caused injury." Opp. at 2, 10-12. This is wrong. In fact, the Supreme Court rejected this precise argument in *Thole v. U.S. Bank, N.A.*, 140 S. Ct. 1615, 1622 (2020). Article III constitutional standing requires a "concrete and particularized injury" that is "fairly traceable to the challenged conduct." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). In the ERISA defined contribution plan context,

---

[2] *See also In re Citigroup Erisa Litig.*, 104 F. Supp. 3d 599, 612-13 (S.D.N.Y. 2015), *aff'd sub nom. Muehlgay v. Citigroup Inc.*, 649 F. App'x 110 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 583 (2016) (plaintiffs lack standing where "no named plaintiffs . . . qualify as participants or beneficiaries for the [Plan"); *In re SLM Corp. ERISA Litig.*, 2010 WL 3910566, at *12 (plaintiffs who "have neither participated in nor been beneficiaries of the Retirement Plan" lacked standing to bring those claims); *Gates v. United Health Grp. Inc.*, 2012 WL 2953050, at *9 (S.D.N.Y. July 16, 2012) (ERISA plaintiff lacked standing to pursue class action claims "which relate to any ERISA plan . . . in which she was not a participant or beneficiary.").

individual participants can be injured only by "fiduciary breaches that impair the value of plan assets in [the] *participant's individual account*." *LaRue v. DeWolff, Boberg & Assocs.*, 552 U.S. 248, 256 (2008) (emphasis added). Here, because Plaintiffs admittedly never invested any of their individual account assets in four challenged investments, their individual 401(k) Plan account assets cannot have been impaired by the allegedly excessive fees of any of those investments. Therefore, Plaintiffs lack Article III standing to pursue claims challenging those investments.

Second, Plaintiffs contend that their alleged injuries related to their separate recordkeeping fee claim "gives them standing to pursue the Plan's losses caused by Defendants' related conduct concerning funds in which Plaintiffs were not invested." Opp. at 12 (emphasis omitted). This argument also fails. In the Supreme Court's words, "standing is not dispensed in gross." *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996). "[P]laintiffs must demonstrate standing for *each claim* that they press and for *each form of relief* that they seek," *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021) (emphases added), even where "all claims for relief derive from a common nucleus of operative fact," *DaimlerChysler Corp. v. Cuno*, 547 U.S. 332, 351 (2006). This means litigants cannot "leverage their standing to challenge" one allegedly unlawful action "into a challenge to" a different allegedly unlawful action arising out of the same operative facts. *Id.* at 350-51.

### C. Plaintiffs Have Not Stated a Plausible Claim for Excessive Recordkeeping Fees

Deloitte explained that Plaintiffs' allegations fail to state any plausible claim of fiduciary breach for several reasons: (1) no inference of imprudence can emerge from an allegation that the Plans paid higher recordkeeping fees than a few other plans in a single year; (2) the Complaint's fee comparisons fail to consider the total fees paid by the comparator plans, as the Complaint says

6

is required;³ and (3) the Complaint fixates exclusively on cost, without considering publicly available documents showing the Plans' recordkeeper provided a variety of different services not provided by the comparator plans' recordkeepers. Mem. at 13-19. Plaintiffs' Opposition ignores the first two points altogether. The Court should treat that silence as a concession. *See Cole v. Blackwell Fuller Music Publ'g, LLC*, 2018 WL 4680989, at *7 (S.D.N.Y. Sept. 28, 2018) (collecting cases).

The only one of Deloitte's arguments Plaintiffs chose to address relates to their failure to plead allegations about how the Plans' recordkeeping services compared to the services received by the comparator plans for allegedly lower fees. On that point, Plaintiffs simply retreat to calling the issue a "red herring" because they "alleged that nearly all recordkeepers offer the same range of services." Opp. at 16. This rejoinder misses the mark. For one, the fact that all recordkeepers might *offer* similar services does not mean that every plan *negotiates and receives* the same services. *See* Mem. at 17 n.15. Nor does the Complaint allege otherwise. Moreover, the Opposition completely sidesteps the publicly available Forms 5500 showing that the Deloitte Plans' recordkeeper provided *many different services in addition to recordkeeping services*, whereas most of the comparator plans' recordkeepers provided *just recordkeeping services*. The comparison between fees paid for completely different services is meaningless. *See Brown v. Daikin Am., Inc.*, 2021 WL 1758898 (S.D.N.Y. May 4, 2021). That is why Judge Román recently dismissed a recordkeeping-fee claim based on similar allegations where the Form 5500 filings for the comparable plans "indicate[d] that the services provided are different or more limited than

---

³ Another court in this district recently dismissed a plaintiff's recordkeeping fee claim based on similar allegations where the complaint failed to allege how it calculated the plan's indirect fees. *Cunningham*, 2022 WL 889164, at *5.

those the Plan participants receive."[4] *Cunningham*, 2022 WL 889164, at *4.  This Court should do the same.

### D. Plaintiffs Have Not Stated a Plausible Claim for Imprudent Investments

As the Second Circuit has held, the allegation that an investment option was too expensive must be "*combined with other alleged facts*" to give rise to an inference of imprudence.  *Pension Ben. Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 721 (2d Cir. 2013).  The Complaint offers no such allegations here.  Further, ERISA plaintiffs asserting imprudent-investment claims must provide a "meaningful benchmark" as an alternative for the challenged funds.  *See, e.g.*, *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 823 (8th Cir. 2018).  As numerous courts have held, "median" and "average" fees are not meaningful benchmarks.  Moreover, courts have roundly rejected ERISA plaintiffs' use of the *same ICI Study* the Complaint references here.  *See* Mem. at 20-21.  Plaintiffs' contrary arguments miss the mark.

First, the Opposition insists that median and average fees from a single ICI Study are meaningful benchmarks because the study "uses an objective benchmark for measuring fee expenses: plan size."  Opp. at 20.  Even if true, this elides the principal reason that courts have rejected the study as inappropriate: the ICI "medians" and "averages" combine both index funds and actively-managed mutual funds.  Because index funds are less expensive than actively-

---

[4] Judge Román's decision comports with Second Circuit precedent in *Young v. GM Inv. Mgmt. Grp.*, 325 F. App'x 31 (2d Cir. 2009), which affirmed dismissal where "[p]laintiffs fail[ed] to allege that the fees were excessive relative to the services rendered."  *Id.* at 33.  Plaintiffs attempt to distinguish *Young* on the basis that their Complaint supposedly offers "other factors relevant to determining whether a fee is excessive under the circumstances."  Opp. at 17 n.11.  But Plaintiffs neglect to identify these "other factors," and ignore decisions from other district courts in this Circuit that have dismissed similar allegations.  *See, e.g.*, *Ferguson v. Ruane Cunniff & Goldfarb Inc.*, 2019 WL 4466714, at *8 (S.D.N.Y. Sept. 18, 2019).

managed funds, a median or average that lumps together both is useless in establishing that any particular investment is overpriced. Indeed, the ICI Study itself explains that "[t]his material is *not intended for benchmarking* the costs of specific plans." ICI Study at Introduction (emphasis added).[5] Therefore, Plaintiffs' contention that the ICI Study's costs are based on "plan size" helps nothing.

Second, Plaintiffs contend questions about their "choice of comparators" is a factual issue that cannot be addressed on a motion to dismiss. Opp. at 21-22. This is wrong. Courts routinely require plausible allegations that show a "meaningful benchmark" to get past the pleadings stage. *See* Mem. at 20-21. If plaintiffs could subvert that requirement simply by crying "fact dispute," no ERISA fiduciaries—no matter how prudent their process on the face of the complaint—would be safe from sweeping fiduciary-breach claims. *See, e.g.*, *Seidner v. Kimberly-Clark Corp.*, 2022 WL 865890, at *2 (N.D. Tex. Mar. 23, 2022).

### E.     Plaintiffs Have Not Stated a Claim for Breach of Duty to Monitor

Finally, as to the Complaint's ancillary failure-to-monitor claim, Plaintiffs concede that a failure-to-monitor claim is derivative of the imprudence claim.

## III.    CONCLUSION

For the reasons set forth above and in Deloitte's opening Memorandum, the Court should grant Deloitte's Motion in its entirety and with prejudice.

Dated:  May 20, 2022                    Respectfully submitted,

                                        */s/ Brian T. Ortelere*
                                        Brian T. Ortelere
                                        Jared R. Killeen
                                        MORGAN, LEWIS & BOCKIUS, LLP
                                        1701 Market Street
                                        Philadelphia, PA  19103-2921

---

[5] ICI Study, https://www.ici.org/system/files/2021-07/21_ppr_dcplan_profile_401k.pdf (cited in Compl. ¶ 63 n.7).

Telephone: +1.215.963.5917
Facsimile: +1.215.963.5001
brian.ortelere@morganlewis.com
jared.killeen@morganlewis.com

*Attorneys for Defendants*

## **CERTIFICATE OF COMPLIANCE**

I, Brian T. Ortelere, an attorney, hereby certify that the Reply Memorandum in Support of Defendants' Motion to Dismiss the Complaint complies with the type-volume limitation pursuant to § II.D of the Individual Practices of Judge John G. Koeltl.  The brief contains 2,766 words of Times New Roman 12-point proportional type.

*/s/ Brian T. Ortelere*
Brian T. Ortelere

**CERTIFICATE OF SERVICE**

  I, Brian T. Ortelere, an attorney, hereby certify that on May 20, 2022, I electronically filed copies of the foregoing Reply Memorandum in Support of Defendants' Motion to Dismiss the Complaint through the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

<u>/s/ Brian T. Ortelere</u><br>
Brian T. Ortelere