UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RUPINDER SINGH, ET AL.,

                    Plaintiffs,

          - against -

DELOITTE LLP, ET AL.,

                    Defendants.

21-cv-8458 (JGK)

MEMORANDUM OPINION
AND ORDER

JOHN G. KOELTL, District Judge:

The plaintiffs, Rupinder Singh, Jeffrey Popkin, Joni
Walker, and Jenny Mark, brought this putative class action
against the defendants Deloitte LLP ("Deloitte"), the Board of
Directors of Deloitte LLP (the "Board"), and the Retirement Plan
Committee of Deloitte LLP (the "Committee") alleging a breach of
the fiduciary duty of prudence in violation of the Employment
Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, et
seq. On January 13, 2023, this Court granted the defendants'
motion to dismiss the original complaint and allowed the
plaintiffs to move to file an amended complaint if the
plaintiffs could "explain how any proposed amended complaint
would resolve the defects in the current complaint." Singh v.
Deloitte LLP, No. 21-cv-8458, 2023 WL 186679, at *7 (S.D.N.Y.
Jan. 13, 2023).

The plaintiffs now move for leave to file an amended
complaint pursuant to Federal Rule of Civil Procedure 15. ECF

No. 63. In their amended complaint, the plaintiffs provide additional allegations in support of their argument that the administrative and recordkeeping fees charged were excessive and that the defendants breached their fiduciary duties by not obtaining lower fees. The amended complaint omits the plaintiff's original allegations against the Profit Sharing Plan and any allegations regarding expense ratios, and focuses only on whether the 401(k) Plan's recordkeeping and administrative costs were excessive. The plaintiffs have also provided an expert declaration in support of their claims. For the following reasons, the plaintiffs' motion for leave to file an amended complaint is **denied.**

## I.

The Court assumes familiarity with the original facts of this case, which are set out in greater detail in <u>Singh</u>, 2023 WL 186679, at *1-2.

The plaintiffs' proposed amended complaint includes additional allegations in support of their claims. The plaintiffs allege that, from 2015 to 2019, the 401(k) Plan (the "Plan") had "between 62,114 and 81,639 participants with account balances." Proposed Am. Compl., ECF No. 63-1, ¶ 11. The plaintiffs allege that a separate plan, the Profit Sharing Plan, had participants ranging from "6,492 to 7,388 participants" during the same period, and that the defendants "could have

2

leveraged the number of participants" in the Profit Sharing Plan, in addition to the number of participants in the 401(k) Plan, to obtain lower recordkeeping and administrative fees. Id. ¶¶ 13-14.

The plaintiffs allege that there are "essential recordkeeping services provided by all national recordkeepers for large plans with substantial bargaining power," such as the Plan in this case. Id. ¶ 68. These include: basic account recordkeeping; multi-channel participant and plan sponsor access; daily participant transaction accounting; payroll service; participant tax reporting services; participant confirmations, statements, and standard notices; plan-level reporting and annual financial package; participant education; and plan consulting. Id. These services are allegedly offered "by all recordkeepers for one price . . . regardless of the services chosen or utilized by the plan," and that "[a]ncillary services such as QDRO's, participant loans, and self-directed brokerage accounts are normally charged" only to participants who use those services. Id. ¶ 69. The plaintiffs allege that the "services chosen by a large plan do not affect the amount charged by recordkeepers for . . . basic and fungible services." Id. ¶ 70.

The plaintiffs allege that the "cost of providing recordkeeping services often depends on the number of

participants in a plan," and that such a cost "is directly
linked to the number of participant accounts within the plan,"
allowing "plans with large numbers of participants [to] take
advantage of economies of scale by negotiating a lower per-
participant recordkeeping fee." Id. ¶ 71.

The plaintiffs allege that Section 408(b)(2) of ERISA
requires the Plan to provide plan fiduciaries with "disclosures
concerning fees and services provided" by the Plan, id. ¶ 59,
and that these disclosures "provided to plan sponsors and
fiduciaries are generally not made available to plan
participants," including the plaintiffs in this case, id. ¶ 78.
The plaintiffs represent that they attempted to discover the
details of these disclosures by writing to the defendants
requesting certain meeting minutes. Id. ¶ 83. The defendants
allegedly denied this request. Id. The plaintiffs allege that
they "do not have actual knowledge of the specifics of [the
defendants'] decision-making process with respect to the Plan .
. . because this information is solely within the possession of"
the defendants. Id. ¶ 85.

The plaintiffs allege that, from 2015 to 2019, the Plan's
recordkeeping cost per participant, when considering only direct
costs, ranged from $46.23 to $67.59. Id. ¶ 95. The plaintiffs
allege that, only comparing direct costs, the Plan's

4

recordkeeping and administrative fees charged "were more than double a reasonable rate." Id. ¶ 96.

The plaintiffs have also provided the expert declaration of Frances Vitagliano to bolster their amended complaint. ECF No. 63-1, Ex. 1 ("Vitagliano Decl."). In the declaration, Vitagliano opines that the recordkeeping and administrative fees charged by the Plan were excessive. Id. ¶¶ 42-67.

## II.

Federal Rule of Civil Procedure 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave," and that the "court should freely give leave when justice so requires." Whether to permit leave to amend is within the sound discretion of the district court, and ordinarily leave to amend should be granted in the absence of "undue delay, bad faith or dilatory motive on the part of the movant." Foman v. Davis, 371 U.S. 178, 182 (1962). However, leave to amend should be denied where the proposed amendment would be futile. Ellis v. Chao, 336 F.3d 114, 127 (2d Cir. 2003). A proposed amendment is futile if the amended pleading "could not withstand a motion to dismiss

pursuant to Fed. R. Civ. P. 12(b)(6)." Lucente v. Int'l Bus. Machs. Corp., 310 F.3d 243, 258 (2d Cir. 2002).[1]

When deciding whether an amended pleading could withstand a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the amended complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiffs' favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the amended complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all alterations, citations, footnotes, and internal quotation marks in quoted text.

court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." Id. When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the amended complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).

### III.

In their amended complaint, the plaintiffs argue that the Plan was charging excessive recordkeeping and administrative fees and that the defendants breached their fiduciary duty of prudence under ERISA by not obtaining lower fees.[2] Granting leave to amend the complaint would be futile because the defects present in the original complaint continue to exist in the proposed amended complaint.

The proposed amended complaint does not allege new facts curing the original complaint's failure to allege with specificity what recordkeeping services the Plan and its

---

[2] The plaintiffs also bring a derivative failure to monitor claim along with their claim for breach of fiduciary duty. This derivative claim rises and falls with the breach of fiduciary duty claim because failure to monitor claims "cannot survive absent a viable claim for breach of a duty of prudence." Coulter v. Morgan Stanley & Co., 753 F.3d 361, 368 (2d Cir. 2014).

comparators received. "Well-reasoned decisions in this Circuit
have found that plaintiffs must plausibly allege that the
administrative fees were excessive relative to the services
rendered." Singh, 2023 WL 186679, at *5. The proposed amended
complaint alleges only that there are "essential recordkeeping
services provided by all national recordkeepers for large plans
with substantial bargaining power," providing a list of such
services, and that "[t]hese services are offered by all
recordkeepers for one price . . . regardless of the services
chosen or utilized by the plan." Proposed Am. Compl. ¶¶ 68-69.
But the proposed amended complaint never alleges what services
Vanguard actually provided to the Plan. It provides only
conclusory allegations, similar to those present in the original
complaint, that "nearly all recordkeepers in the marketplace
offer the same range of services." Singh, 2023 WL 186679, at *5.
It does not go further to allege "what recordkeeping services
the 401(k) Plan received from Vanguard," nor does it allege
"what recordkeeping services the comparator plans received from
Vanguard." Id. Accordingly, the amended complaint still fails to
allege that "the recordkeeping fees were excessive relative to
the services rendered." See Albert v. Oshkosh Corp., 47 F.4th
570, 580 (7th Cir. 2022); Smith v. CommonSpirit Health, 37 F.4th
1160, 1169 (6th Cir. 2022); see also Gonzalez v. Northwell
Health, No. 20-cv-3256, 2022 WL 4639673, at *10 (E.D.N.Y. Sep.

8

30, 2022) ("A plaintiff must plead administrative fees that are
excessive in relation to the specific services the recordkeeper
provided to the specific plan at issue.").[3]

By providing only the direct recordkeeping and
administrative costs of the Plan, the amended complaint attempts
to cure a defect of the original complaint, which failed to make
an "apples to apples" comparison between the direct costs of the
Plan and the direct costs of the comparator plans. Singh, 2023
WL 186679, at *5. In 2019, the Plan allegedly charged $65.24 per
participant,[4] higher than the direct costs charged by the two
comparator plans that used Vanguard as their recordkeeper in the
same year, which ranged from $27 to $33 per participant. See
Proposed Am. Compl. ¶¶ 95, 104. However, this bare "price tag to
price tag comparison" does not help the plaintiffs because
"without information as to the type and quality of the services

---

[3] The plaintiffs also cite a survey by "NEPC, a consulting
group," to allege that "the majority of plans with over 15,000
participants . . . paid slightly over $40 per participant
recordkeeping, trust and custody fees." Proposed Am. Compl.
¶¶ 109-110. But the NEPC survey is unpersuasive because it
"notes that recordkeeping fees are in part a function of the
package of services the plan sponsor has contracted for." See
Krutchen v. Ricoh USA, Inc., No. 22-678, 2023 WL 3026705, at *2
(E.D. Pa. Apr. 20, 2023).
   [4] The Deloitte 401(k) Plan disclosure provides that, in
2019, the Plan charged $32 per participant in recordkeeping
fees. ECF No. 33-17 at 4. It is unclear whether the Plan in 2019
charged $65.24 in recordkeeping fees, as alleged by the
plaintiffs, or $32, based on the disclosure. However, it is
unnecessary to resolve this factual dispute.

provided," there is no basis on which to infer the defendants' imprudence. See Krutchen v. Ricoh USA, Inc., No. 22-678, 2023 WL 3026705, at *2 (E.D. Pa. Apr. 20, 2023). The plaintiffs' comparison also only considers a single year, 2019, but does not otherwise consider or allege any facts regarding possible differences in cost between 2015 and 2019, the time period relevant to this case. Moreover, this comparison of direct costs still "provides little insight into whether total recordkeeping fees . . . paid by smaller-plan participants are higher or lower than the total recordkeeping fees paid by [the] plaintiff and other Plan participants." See Gonzalez, 2022 WL 4639673, at 10. The plaintiffs' allegations highlight that a plan's indirect costs may range widely from year-to-year. See Proposed Am. Compl. ¶¶ 94-95 (identifying a range of indirect costs from $829,049 in 2015 to $54,789 in 2019, creating discrepancies in per-participant costs of over $10).

The plaintiffs allege that the recordkeeping and administrative services provided to all plans are fungible and that any difference in fees charged depends on the number of participants in a given plan. In the plaintiffs' view, the bigger the plan, the lower the costs. However, the plaintiffs' allegation is not plausible in light of the costs charged by the comparator plans. The plaintiffs do not consider that different plans may offer different services, or that different plans may

10

provide a higher level of service than competing plans. Although
the plaintiffs allege that "[n]umerous recordkeepers in the
marketplace are capable of providing a high level of service,"
id. ¶ 67, the proposed amended complaint does not allege what
level of service the Plan provided, and there are similarly no
allegations as to whether less expensive comparator plans
provided a similar quality of service to the services Vanguard
provided to the Plan. Without allegations comparing specifically
the quality of services rendered, or the number of services
provided, between the Plan and its comparators, the conclusory
allegations that "[n]early all recordkeepers in the marketplace
offer the same range of services" and "[n]umerous recordkeepers
in the marketplace are capable of providing a high level of
service," id. ¶¶ 66-67, are unpersuasive. See Krutchen, 2023 WL
3026705, at *2 ("Within the careful, context-sensitive scrutiny
the Supreme Court mandates in evaluating ERISA claims, vaguely
alleging recordkeeping services are fungible does not plausibly
allege a breach."). Moreover, the allegations in the proposed
amended complaint still retain the same defect as in the
original complaint: "the plaintiffs' allegation that all
recordkeepers offer the same range of services does not mean
that all plans employing a particular recordkeeper receive an
identical subset of services within that range." Singh, 2023 WL
186679, at *5.

The plaintiffs cite a recent decision of the Court of Appeals for the Seventh Circuit, Hughes v. Northwestern Univ. ("Hughes II"), for the proposition that an excessive recordkeeping fees claim can be supported by an allegation that "recordkeeping services are fungible and that the market for them is highly competitive." 63 F.4th 615, 632 (7th Cir. 2023). Hughes was decided on remand from the Supreme Court after the Supreme Court held that "even in a defined-contribution plan where participants choose their investments, plan fiduciaries are required to conduct their own independent evaluation to determine which investments may be prudently included in the plan's menu of options." Hughes v. Northwestern Univ., 142 S. Ct. 737, 742 (2022); see also Singh, 2023 WL 186679, at 6 n.4 (explaining the import of Hughes). In the earlier decision on the motion to dismiss in this case, this Court clarified that the Supreme Court's decision in Hughes did not affect this case because "neither party has alleged that the presence of investor choice relaxed the defendants' duty of prudence." Singh, 2023 WL 186679, at 6 n.4. That remains true for the allegations in the proposed amended complaint.

However, the facts of Hughes II are not comparable to the facts in this case. The plans in Hughes II used two recordkeepers, TIAA and Fidelity, unlike the Plan in this case which used a single recordkeeper, Vanguard. See Hughes II, 63

12

F.4th at 632. Because the plans in Hughes II used two
recordkeepers, the Hughes II plaintiffs provided examples of
other plans that "successfully reduced recordkeeping fees" by
consolidating to a single recordkeeper. See id. at 632-33.
Instead, this case is much more like the decision of the Court
of Appeals for the Seventh Circuit in Albert because
"[c]onsolidation of recordkeepers [is] not at issue." See id. at
632 n.4. Albert, like Hughes II, was decided after the Supreme
Court's decision in Hughes. However, unlike Hughes II, the Court
of Appeals for the Seventh Circuit in Albert held that the
plaintiff's allegations of excessive recordkeeping fees "simply
do[] not provide the kind of context that could move [the claim
for ERISA fiduciary breach] from possibility to plausibility."
Albert, 47 F.4th at 580.

The plaintiffs in Hughes II also showed that the comparator
plans "leveraged plan assets to lower fees by negotiating for a
flat administrative fee structure and revenue-sharing rebates,"
a comparison which the plaintiffs in this case have not alleged.
Hughes II, 63 F.4th at 632. Moreover, the plaintiffs in Hughes
II based their allegations that the plans paid excessive
recordkeeping fees "on the services provided by existing
recordkeepers and the Plans' features." Id. Accordingly, unlike
the plaintiffs in this case, the plaintiffs in Hughes II

13

successfully "plead[ed] that the fees were excessive relative to the recordkeeping services rendered." Id.

The plaintiffs attempt to bolster their allegations with the declaration of Francis Vitagliano, an "expert with 35 years of experience in the record keeping and administration business and the related asset management processing." Proposed Am. Compl. ¶ 100. In the declaration, Vitagliano opines that based on his experience and an analysis of the relevant factors, "the Plan should have been able to obtain per participant recordkeeping fees of $23-$26." Vitagliano Decl. ¶ 47.

Federal Rule of Civil Procedure 10(c) provides that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." "A written instrument is a legal document that defines rights, duties, entitlements, or liabilities, such as a statute, contract, will, promissory note, or share certificate. A document that does not evidence legal rights or duties or set forth the legal basis for the plaintiff's claims does not satisfy the definition of written instrument." Cabrega v. Campbell Soup Co., No. 18-cv-3827, 2019 WL 13215191, at *5 (E.D.N.Y. Nov. 18, 2019).

The plaintiffs' reliance on an expert declaration at the motion to dismiss stage is improper. The declaration was "created long after the events giving rise to this litigation and is thus not the type of written instrument falling within

14

the purview of Rule 10(c)." See <u>Ong v. Chipotle Mexican Grill,</u>
<u>Inc.</u>, 294 F. Supp. 3d 199, 223 (S.D.N.Y. 2018) (striking a
declaration and any conclusory allegations in the complaint
based on that declaration). The Vitagliano Declaration "was
drafted for the purpose of this litigation," and accordingly the
plaintiffs "could not have relied on its terms while drafting
their complaint." See <u>id.</u> at 224; <u>see also</u> <u>Chambers</u>, 282 F.3d at
153 (explaining that a document may be considered "where the
complaint relies heavily upon its terms and effect" such that
the document is "integral to the complaint" and the plaintiff
relied on the document "in framing the complaint"). Although the
declaration is referenced in the amended complaint, "[m]erely
mentioning a document in the complaint will not satisfy [the
integral to the complaint] standard; indeed, even offering
limited quotations from the document is not enough." <u>Goel v.</u>
<u>Bunge, Ltd.</u>, 820 F.3d 554, 559 (2d Cir. 2016). There is no basis
on which the Court may consider Vitagliano's opinions as to
whether the Plan charged unreasonable recordkeeping fees. <u>See</u>
<u>Ong</u>, 294 F. Supp. 3d at 224 (refusing "to accept as true any
paragraphs in [the] complaint alleging [the] expert's legal
conclusions"). To do so would "blur the distinction between
summary judgment and dismissal for failure to state a claim upon
which relief can be granted." <u>DeMarco v. DepoTech Corp.</u>, 149 F.
Supp. 2d 1212, 1221 (S.D. Cal. 2001).

In any event, the Vitagliano Declaration is simply a conclusory statement of the plaintiff's argument and it does not move the allegations from possible to plausible. The declaration offers no facts to support its conclusion that "the Plan should have been able to obtain per participant recordkeeping fees of $23-$26" other than Vitagliano's "experience" and subjective review. Vitagliano Decl. ¶¶ 42, 47; see also Cunningham v. Cornell Univ., No. 16-cv-6525, 2019 WL 4735876, at *9 (S.D.N.Y. Sept. 27, 2019) ("[G]eneral references to an expert's experience do not provide a reliable basis for his proposed testimony."); Huang v. TriNet HR III, Inc., No. 20-cv-2293, 2023 WL 3092626, at *8 (M.D. Fla. Apr. 26, 2023) ("Mr. Vitagliano does not detail how his knowledge and experience led him to calculate the fees for the relevant time period, or why those numbers are reasonable in light of any features of the Plan."). Vitagliano attempts to support his analysis by referencing "a recent stipulation filed by Fidelity," a different recordkeeper than the one in this case, in an unrelated litigation, and the plaintiffs also refer to this stipulation in their amended complaint. Id. ¶ 48; Proposed Am. Compl. ¶¶ 105-108.[5] But this stipulation, much like the Vitagliano Declaration, cannot be

_____

[5] The plaintiffs incorrectly refer to Fidelity as "the Plan's recordkeeper at all relevant times," Proposed Am. Compl. ¶ 105, when Vanguard was in fact the Plan's recordkeeper.

considered because it does not form part of the pleadings in this case and is not binding on the parties in this case. Moreover, the stipulation related to recordkeeping services that Fidelity provided to its own plans and there is no basis to conclude those services are comparable to the services Vanguard provided to the Plan. See Wehner v. Genentech, Inc., No. 20-cv-6894, 2021 WL 507599, at *6 (N.D. Cal. Feb. 9, 2021) (rejecting relevance of Fidelity stipulation); Johnson v. PNC Fin. Servs. Grp., Inc., No. 20-cv-1493, 2021 WL 3417843, at *4 (W.D. Pa. Aug. 3, 2021) (same).

While the plaintiffs allege that the Plan should have conducted a Request for Proposal, because there are insufficient plausible allegations that the fees paid by the plans were excessive, there are insufficient allegations that the decision making process to determine the fees was in violation any fiduciary duty. See Smith v. CommonSpirit Health, No. 20-95, 2021 WL 4097052, at *12 (E.D. Ky. Sept. 8, 2021), aff'd, 37 F.4th 1160 (6th Cir. 2022).

Moreover, the plaintiffs' claim based on a failure to monitor is wholly derivative of the plaintiffs' claims for a breach of fiduciary duty. For the reasons explained in the original decision, this claim also fails. Singh, 2023 WL 186679, at *7.

The proposed amended complaint suffers from the same
pleading deficiencies as the original complaint. Because the
plaintiffs have not cured these defects in their proposed
amended complaint, the proposed amendment would be futile.
Accordingly, the plaintiffs' motion to amend is **denied.**

**CONCLUSION**

The Court has considered all the arguments of the parties.
To the extent not specifically addressed above, the arguments
are either moot or without merit. For the foregoing reasons, the
plaintiffs' motion to amend the complaint is **denied.** The Clerk
is directed to close all pending motions. The Clerk is also
directed to close this case because the original complaint has
already been dismissed.

**SO ORDERED.**

Dated:   New York, New York
         July 5, 2023

                                    John G. Koeltl
                              United States District Judge